# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ANGEL PEÑA AYALA,

    Plaintiff,

v.

J. SALAZAR, CDCR CORRECTIONAL OFFICER, #87940,

    Defendant.

Case No.: 18-cv-02885-JLS (JLB)

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

[ECF No. 7]

    The Court submits this Report and Recommendation to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern District of California.

    On December 24, 2018, plaintiff Angel Peña Ayala ("Plaintiff"), a California prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to 42 U.S.C. § 1983. (*See* ECF Nos. 1, 5.) On July 23, 2019, defendant Correctional Officer J. Salazar ("Defendant") filed a Motion to Dismiss the Complaint. (ECF No. 7.)

    Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) Plaintiff failed to exhaust administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(a), and (2) the claim is barred by the favorable termination doctrine. (*Id.*) For the reasons set forth below, the Court recommends that Defendant's Motion to Dismiss be **DENIED**.

**I.  BACKGROUND**

At the time of the events alleged in the Complaint, Plaintiff was an inmate residing at Richard J. Donovan Correctional Facility ("RJD"). (ECF No. 1 at 1.) Plaintiff alleges in his Complaint that, on April 5, 2017, Defendant subjected him to cruel and unusual punishment. (*Id.* at 3.) The following allegations are taken from the Complaint:

On April 5, 2017, at around 12:40 p.m., LCSW (licensed clinical social worker) Salerno deemed it necessary to place Plaintiff on suicide watch. (*Id.* at 3, 50.) At approximately 1:15 p.m., Plaintiff was placed in a cage in the gym, awaiting escort to suicide watch. (*Id.* at 3.) Plaintiff was strip searched and allowed to keep only his boxers and socks. (*Id.*) Plaintiff was also left hand-cuffed while he awaited escort. (*Id.*) Plaintiff was given a "1083 Property Receipt" and told he could take it with him to suicide watch. (*Id.*)

At about 6:45 p.m., Defendant took Plaintiff out of the cage and proceeded to escort him to suicide watch. (*Id.*) Plaintiff was held by his left arm, hand-cuffed from behind, and carrying the property receipt in his hands. (*Id.*) Defendant was situated to the left of Plaintiff when he demanded something which Plaintiff could not hear due to other recent injuries. (*Id.*) Defendant instantly became enraged and shouted at Plaintiff and Plaintiff quickly tried explaining that he had trouble hearing and that he was told he could keep the property receipt. (*Id.*) However, Defendant was "enraged" and slammed Plaintiff against a window, turned him, kicked his legs to trip him, and slammed him on the ground. (*Id.*) Defendant then punched Plaintiff's head, face, and body while Plaintiff was face down on the ground and handcuffed. (*Id.*) Defendant was wearing only his boxers and socks and did not resist in any way. (*Id.*)

After the incident, Defendant proceeded to fabricate an "entirely false [Rules Violation Repot ("RVR"), CDCR-115 RVR, Log No. 2562660] to legitimize his assault."

2

(*Id.* at 3, 14, 19.) In the report, Defendant states that he merely "forcefully placed [Plaintiff] on the ground." (*Id.* at 3, 19.) After the incident, Plaintiff was placed in Administrative Segregation. (*Id.* at 51.) Plaintiff's Administrative Segregation Notice states that he was placed in Administrative Segregation for the following reason: "On 04/05/2017, at approximately 1315 hours, you were initially placed in ASU-AHC (7) for suicidal ideations. However, while being escorted to the ASU, you committed an act of battery upon a Peace Officer; specifically, you struck [Defendant], with your right foot, on [Defendant's] right shin area, which ultimately resulted in the use of physical force to subdue your attack." (*Id.*)

After a hearing on or about June 30, 2017, Plaintiff was found guilty of violating California Code of Regulations title 15, § 3005(a). (*Id.* at 3, 14-23.) Specifically, he was found guilty of resisting staff "based on the preponderance of evidence submitted at the hearing." (*Id.*) Among other things, Plaintiff lost eighty-five days of good-time credits. (*Id.* at 19.)

Plaintiff subsequently filed two CDCR Form 602 appeals relating to the incident. (*Id.* at 11, 24, 27.) Days after the April 5, 2017 incident, Plaintiff filed his first appeal, which was initially given Log No. CIM-C-17-01015, and later assigned Log No. RJD-X-17-02204. (*Id.* at 3, 11-12.) This appeal concerned Plaintiff's claim against Defendant for unnecessary and excessive use of force. (*Id.* at 4.)[1]

Plaintiff was interviewed about his first appeal, RJD-X-17-02204, in CIM's crisis unit in mid-April 2017. (*Id.* at 3.) On April 21, 2017, Plaintiff was notified that his appeal had been forwarded to RJD for further processing. (*Id.* at 11.) On May 3, 2017, the appeal was sent to staff for a second level response. (*Id.* at 12.) The accompanying notice sent to

---

[1] Plaintiff also filed a second appeal, dated July 23, 2017, regarding his RVR hearing. (*Id.* at 27.) That appeal was given Log No. RJD-X-04614 and was exhausted at the third level of review on January 28, 2018. (*Id.* at 25-31.)

3

Plaintiff states: "If dissatisfied, you have 30 days from the receipt of the [second level] response to forward your appeal for THIRD level review." (*Id.*)

On May 17, 2017, Plaintiff inquired into the status of his two outstanding appeals by way of a CDCR Form 22. (*Id.* at 7.) Staff responded on June 14, 2017, informing Plaintiff that the response to his appeal designated RJD-X-17-02204 was due June 12, 2017 and was currently pending scanning and mailing to Plaintiff. (*Id.*) Plaintiff was interviewed by Sergeant Rico about this appeal over the telephone at some point in June 2017. (*Id.* at 3.)

On August 28, 2017, Plaintiff submitted another CDCR Form 22 inquiring into the status of his appeal designated RJD-X-17-02204, for which Plaintiff had still not received a response. (*Id.* at 8.) Staff responded on September 1, 2017, informing Plaintiff that his appeal designated 17-1844 was answered and mailed to him on May 30, 2017. (*Id.*) On September 20, 2017, Plaintiff submitted yet another CDCR Form 22 inquiring into his appeal, stating that the appeal referenced in response to his last inquiry was incorrect, and that he was inquiring into his appeal designated CIM-C-17-01015 (or RJD-X-17-02204). (*Id.* at 9.) Staff responded on September 26, 2017, stating that Plaintiff's appeal designated 17-2204 had been answered and mailed to Plaintiff on July 14, 2017, and that a copy could be found in his ERMS file. (*Id.*) Plaintiff alleges he never received a copy of his second level appeal response in the mail. (*Id.* at 3.) Plaintiff further alleges that by the time he would have received the Staff response, the time to file his appeal to the third level would have expired. (*Id.* at 6.)

On August 12, 2018, Plaintiff submitted another CDCR Form 22 inquiring into his second level appeal again for purposes of litigation, stating that he had never received it and asking for a copy from his ERMS file. (*Id.* at 6, 10.) Staff responded on August 17, 2018, stating that Plaintiff could request a copy of his appeal from his facility counselor. (*Id.*)

In his Complaint, with respect to exhaustion of administrative remedies, Plaintiff alleges that he was "denied the ability to exhaust administrative remedies" for his appeal

designated RJD-X-17-02204 regarding the unnecessary and excessive use of force by Defendant. (*Id.* at 4.) Plaintiff claims he intended to exhaust his appeal, but "[w]hether accidentally or deliberately, CDCR staff obstructed Plaintiff from exhausting this appeal by not returning the appeal on time, and then being 'lost' in the mailing process." (*Id.*)

Plaintiff seeks damages and relief in the form of the dismissal by CDCR of Defendant's RVR Log No. 2562660 "since it is entirely false and Plaintiff was denied due process." (*Id.* at 5.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard of Rule 8 does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22

(9th Cir. 2008). The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Ordinarily, affirmative defenses such as res judicata may not be raised on a Rule 12(b)(6) motion to dismiss. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam). Dismissal under Rule 12(b)(6) on such basis is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1357 (3d ed.1998)). If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper. *Id.* (citing *Scott*, 746 F.2d at 1378).

**B.      Standards Applicable to *Pro Se* Litigants**

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson*, 551 U.S. at 94 (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings

6

liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

#### 1. Legal Standard

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory prior to filing a complaint. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Congress enacted § 1997e(a) with the overall goal to "'reduce the quantity and improve the quality of prisoner suits[.]'" *Id.* at 1200. (quoting *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)).

An inmate must exhaust grievance procedures that are available, meaning those that are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Proper exhaustion means compliance with an agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The PLRA "does not require exhaustion when

7

circumstances render administrative remedies 'effectively unavailable.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). An administrative procedure may be unavailable when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

Failure to exhaust is an affirmative defense under the PLRA, and it does not fall on the prisoner to plead and demonstrate exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because defendants must "produce evidence proving failure to exhaust in order to carry their burden," failure to exhaust is a matter usually addressed in a motion for summary judgment under Federal Rule of Civil Procedure 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). However, "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id.*

2. Analysis

Plaintiff alleges that he was denied the ability to exhaust his administrative remedies because CDCR staff either "accidentally or deliberately" obstructed the appeal process by not returning his appeal designated RJD-X-17-02204 on time and then by the appeal being lost in the mailing process. (ECF No. 1 at 4.)

Defendant contends that Plaintiff failed to exhaust his administrative remedies because he was informed that he could obtain a copy of his appeal from his ERMS file but did not do so because he wrongly assumed the time to appeal had expired. (ECF No. 7 at 16.) Defendant asserts that administrative remedies were still available to Plaintiff because the May 3, 2017 notice and California's prison regulations provide that an inmate has thirty days from *receiving* an unsatisfactory response to a grievance to submit the grievance to

the next level. (*Id.* (citing ECF No. 1 at 12; Cal. Code Regs. tit. 15, § 3084.8(b)(3).[2]) Therefore, Plaintiff "could have obtained the second-level response from his prison files, documented the date of receipt, and sent the grievance for third-level review." (*Id.*)

In response, Plaintiff claims that he never received the second level appeal response after it was mailed to him. (ECF No. 10 at 5.) He states that "[r]eading through CDCR's appeal policies makes no mention regarding an appeal being lost in the mailing process, nor what action to take in this event. The appeal guidelines make no mention of the 'ERMS' file, or of having to obtain a copy of a lost appeal through it." (*Id.*) Plaintiff further claims that CDCR staff did not follow §§ 3084.8(c) and (e) of Title 15 of the California Code of Regulations, which set forth the time limits for responding to appeals and require an explanation for any delays in the appeal process. (*Id.* at 4-5.) Plaintiff argues that CDCR staff added elements to the appeals process, such as obtaining his appeal through his ERMS file or facility counselor, which obstructed his efforts to exhaust administrative remedies. (*Id.* at 5-6.)

The Honorable Janis L. Sammartino briefly addressed the issue of administrative exhaustion of remedies in her Order granting *in forma pauperis*, dated May 10, 2019. (ECF No. 5 at 6, n. 4.) She noted that "it is not 'clear from the face of the complaint' whether Plaintiff has exhausted all 'available' administrative remedies pursuant to 42 U.S.C. § 1997e(a)." (*Id.* (citing *Albino*, 747 F.3d at 1169).) This Court agrees.

Upon review of Plaintiff's Complaint and its attachments, Plaintiff appears to have successfully completed the first and second level review of his appeal designated RJD-X-17-02204. (ECF No. 1 at 11-12.) Plaintiff also documents his efforts to obtain his second-level response in order to appeal, if necessary, to the third level. The second level response is not attached to the Complaint. (*See id.* at 6-10.) Plaintiff alleges that he did not obtain

---

[2] *See* Cal. Code. Regs. Tit. 15, § 3084.8(b)(3) ("Except as described in subsection 3084.8(b)(4), an inmate or parolee must submit the appeal within 30 calendar days of . . . receiving an unsatisfactory departmental response to an appeal filed.").

9

a copy of the second level response by mail and he did not successfully obtain it by requesting it from staff. (*See id.* at 4-10.) Although Defendant contends that a copy of the second level response was available to Plaintiff and any further appeal by Defendant within thirty days of obtaining his second level response would have been timely, Defendant has not—limited as he is at this stage of the proceedings to the Complaint and its attachments—conclusively established that an administrative remedy was available to Plaintiff.

In some instances, when failure to exhaust is "clear on the face of the complaint," a defendant may raise the issue on a motion for dismissal. *Albino*, 747 F.3d at 1166. However, where it is not clear on the face of the complaint whether a plaintiff exhausted all *available* administrative remedies, as is the case here, the issue of exhaustion is not appropriate on a motion to dismiss. *See id.* The Court therefore recommends that Defendant's Motion to Dismiss on the issue of exhaustion of administrative remedies be **DENIED**.

### B. The Favorable Termination Doctrine

#### 1. Legal Standard

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487.

Thus, if a plaintiff seeks relief based on claims that would "necessarily imply the invalidity" of an underlying conviction or sentence, and the plaintiff has not shown that the conviction or sentence has already been invalidated, either by way of direct appeal, state habeas or pursuant to 28 U.S.C. § 2254, a § 1983 claim cannot be maintained and the

10

complaint must be dismissed without prejudice. *Id.*; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (noting that *Heck* applies to claims for damages and equitable relief); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995); *accord Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997). This has come to be known as the "favorable termination" doctrine. *See Heck*, 512 U.S. at 492; *Velarde v. Duarte*, 937 F. Supp. 2d 1204, 1209 (S.D. Cal. 2013).

The favorable termination doctrine applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (extending *Heck* rule to § 1983 claims that, if successful, would imply the invalidity of deprivations of good-time credits provided for by prison disciplinary proceedings). In other words, when a plaintiff's claim for declaratory relief or money damages "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," the claim is not cognizable under § 1983. *Id.*; *see also Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (holding that the favorable termination doctrine "turns solely on whether a successful § 1983 action would necessarily render invalid a[n] . . . administrative sanction that affected the length of the prisoner's confinement"). When the § 1983 claim does not necessarily implicate the underlying disciplinary action, however, it may proceed. *See Nettles v. Grounds*, 830 F.3d 922, 929 (9th Cir. 2016) ("If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim . . . may be brought in § 1983.") (citing *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004)).

2. <u>Analysis.</u>

Defendant asserts that Plaintiff's claim is barred by the favorable termination doctrine because Plaintiff's allegations concerning the use of excessive force by Defendant "are in direct conflict with the administrative finding made against Plaintiff during the prison rules violation hearing on June 30, 2017, where Plaintiff was found guilty of resisting [Defendant], and assessed an eighty-five day loss of good time credits." (ECF

No. 7 at 19 (citing ECF No. 1 at 14-23).) In his Complaint, Plaintiff seeks a judicial determination that Defendant's conduct violated the Eighth Amendment. (*See* ECF No. 1.) Defendant contends that "such a determination would necessarily invalidate Plaintiff's prison rules-violation conviction—and thereby negate the assessed eighty-five day good-time credit loss." (*Id.* at 20.) For the reasons set forth below, the Court disagrees.

*Heck* does not shield liability from every § 1983 claim solely because the claim is based on the same facts as those in the underlying conviction. In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc), the Ninth Circuit "recognized that an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction." *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (citing *Smith*, 394 F.3d at 699); *see also Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 645 (9th Cir. 2018). Thus, a plaintiff may bring a § 1983 claim "if the use of excessive force occurred *subsequent* to the conduct on which his conviction was based." *Id.* (citing *Smith*, 394 F.3d at 698); *see also Musselman v. Meelhuysen*, 773 F. App'x 417, 418 (9th Cir. 2019) ("*Heck* does not bar § 1983 claims for excessive force that occurred <u>after</u> the conduct that formed the basis for a plaintiff's conviction, because such claims do not necessarily imply the invalidity of the conviction.").

Moreover, in *Hooper v. County of San Diego*, 629 F.3d 1127 (9th Cir. 2011), the Ninth Circuit found that a "conviction [for resisting arrest] does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Id.* at 1134. In that case, a deputy had grabbed Hooper's wrist and told her she was under arrest for possession of a controlled substance, but she pulled her arm away. *Id.* at 1129. During the struggle that followed, Hooper ended up on the ground with the deputy sitting on her back. *Id.* Viewing the facts in the light most favorable to Hooper, she struggled for a brief time on the ground by jerking from side to side and then stopped when the deputy was able to hold her hands behind her

back and instructed her to do so. *Id.* While the deputy was waiting for backup assistance to arrive, he called his canine, and the canine bit Hooper, causing significant injuries. *Id.*

Hooper pled guilty to resisting a peace officer under California Penal Code § 148(a)(1) and then filed a § 1983 complaint for excessive force. *Id.* She did not dispute the lawfulness of her arrest and conceded she resisted the officer in the course of his duties. *Id.* "The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)." *Id.* at 1130. However, Hooper claimed the officer used excessive force in response to her resistance thereafter when he called upon the canine to assist him in making the arrest. *Id.* at 1129.

In reaching its conclusion that Hooper's excessive force claim was not barred under *Heck*, the Ninth Circuit distinguished the case from *Smith*, where the facts allowed the Court "to differentiate cleanly between two phases of the encounter with police." *Id.* at 1131. In contrast, "in Hooper's case, unlike in Smith's, there were no distinct phases. Rather, Hooper's arrest was effectuated in a single continuous chain of events lasting a very brief time." *Id.* In reaching its ruling in *Hooper*, and based upon the intervening California Supreme Court decision in *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008), the Ninth Circuit moved away from the earlier requirement of distinct "divisibility" of actions, focusing instead on whether the conviction for resisting arrest and the claim for excessive force were two distinct events which occurred during one continuous chain of events. *Id.* at 1132. The Ninth Circuit clarified that a "defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him." *Id.* (quoting *Yount v. City of Sacramento*, 43 Cal. 4th 885, 899 (2008)) "The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it." *Id.* (quoting *Yount*, 43 Cal. 4th at 899).

Although *Smith* and *Hooper* both concerned a conviction for resisting a peace officer under California Penal Code § 148(a)(1), as opposed to a rules violation for resisting staff, the Court finds their principles to be applicable here. Thus, "if a plaintiff alleges a scenario

13

whereby both the defendant acted with excessive force and the prison disciplinary infraction is valid, *Heck* is inapplicable." *Blair v. Trimble*, No. 15-cv-00945-BAS(RBB), 2016 WL 4204587, at *2 (S.D. Cal. Aug. 10, 2016); *see also Brown v. Holland*, No. C 13-2762 NC (PR), 2014 WL 1339687, at *4 (N.D. Cal. Mar. 28, 2014) ("Although *Hooper* concerned a conviction under California Penal Code § 148(a)(1), the reasoning of the case leads this Court to doubt that plaintiff's rules violation under California Code of Regulations title 15, section 3005(b)(1) would pose a *Heck* bar to his excessive force and deliberate indifference claims."); *Williams v. Young*, No. 2:12-cv-0318 KJN P, 2014 WL 505184, at *4 (E.D. Cal. Jan. 24, 2014), *adopted by* 2014 WL 994631 (E.D. Cal. Mar. 12, 2014) (noting that if a reasonable fact finder could find the plaintiff violated California Code of Regulations title 15, § 3005 and the defendant had used excessive force, the excessive force finding would not necessarily imply invalidity of the disciplinary conviction, and thus *Heck* is inapplicable).

Here, Plaintiff has alleged a factual scenario that would potentially allow for his § 1983 claim to coexist with his prison disciplinary finding. Plaintiff was found guilty of "Resisting Staff" pursuant to California Code of Regulations title 15, § 3005(a), which provides: "Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person." (*See* ECF No. 1 at 19.) The disciplinary hearing findings state that Plaintiff was found guilty of violating this section "based on the preponderance of the evidence submitted at the hearing." (*Id.*) The evidence upon which the SHO relied is set forth in an evidence section, which includes Plaintiff's only reported statements to the SHO at the hearing: "So I was being escorted to suicide watch and I was reaching in my waist band for a note. The cop took me down but I didn't kick him." (*Id.*) Notably, the Disciplinary Hearing Results attached to the Complaint in this matter do not set forth the factual findings that form the basis of the Resisting Staff determination and do not identify the specific behavior of Plaintiff that constituted resistance. (*See id.*) In fact, the entire narrative of the Findings section of the Disciplinary Hearing Results is limited

14

instead to an abbreviated recitation of the Defendant's claim and the Plaintiff's response: "The rp reports a kick related to inmate Ayala in restraints resisting a search and [turning] resulting in an incidental contact. Inmate Ayala admitted to resistive behavior but denies an intentional battery." (*Id.* at 18-19.)

Based on this record, it is plausible that Plaintiff was found guilty of resisting when he failed to comply with Defendant's instruction "to stop reaching in his waistband." (*See id.* at 19.) Plaintiff alleges that Defendant "made an initial demand which [he] could not hear due to other recent injuries." (*Id.* at 3.) His failure to comply then caused Defendant to become enraged and to engage in the alleged excessive force. (*Id.*) Therefore, although Plaintiff's conduct and Defendant's alleged excessive use of force arise out of the same incident, two separate factual predicates potentially exist, the first giving rise to Plaintiff's disciplinary conviction, and the second, the allegedly excessive response, giving rise to Defendant's potential civil liability. *See Hooper*, 629 F.3d at 1132; *see also Williams*, 2014 WL 505184, at *4.[3]

---

[3] The cases cited by Defendant are distinguishable. In *Velarde*, the court concluded that the plaintiff did not allege any facts that could be construed as "divisible" from those determined by the SHO during the plaintiff's prison disciplinary proceedings and therefore his excessive force claim was barred by *Heck*. 937 F. Supp. 2d at 1217. The SHO specifically concluded that the officers' descriptions of a "deliberate assault" by the plaintiff were credible and that plaintiff would have continued to resist and strike the officer if he had not been restrained. *Id.* Therefore, to prove his excessive force claim, the plaintiff would have to prove facts—*i.e.*, that the "necessary" steps taken by the defendant were excessive—that would be "fundamentally inconsistent with the findings made by the SHO." *Id.* at 1217-18; *see also Curry v. Baca*, 371 F. App'x 733, 734 (9th Cir. 2010) (rejecting the plaintiff's argument that the alleged excessive force by the defendant officers occurred after he assaulted the officers because "the officers' use of force is part of a single act for which the jury found that [the plaintiff] bears responsibility") (quoting *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2002)). That is not the case here, where the alleged facts underpinning Plaintiff's § 1983 claim can be construed as "divisible" from the findings made by the SHO.

Defendant asserts that Plaintiff's resistance consisted of Plaintiff "kicking [him] and continuing to resist after being taken to the ground." (*See* ECF No. 7 at 21; *see also* ECF No. 1 at 18-19.) However, the record before the Court—that is, the Complaint and the attachments to it—does not definitively inform the Court of the factual basis for the SHO's finding of guilt. It is clear that the SHO determined that Plaintiff did not intentionally kick Defendant and Plaintiff was acquitted of the assault charge. (*See id.*) The basis for the resisting charge disciplinary conviction is not clear from the record and therefore it is not clear that a successful prosecution of this case would necessarily imply the invalidity of the conviction. *See Smith*, 394 F.3d at 698-99 (noting that nothing in the record indicates the basis of the plaintiff's plea and stating that a § 1983 action is not barred by *Heck* unless "it is clear from the record" that its successful prosecution would "*necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid"); *see also Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) (finding that the defendants did not demonstrate that the plaintiff's claims were *Heck*-barred because they did not identify anything in the record that shows the specific factual basis for the plaintiff's conviction); *Alvarez v. Chavarria*, No. 1:16-cv-00067-MJS, 2018 WL 1637972, at *4 (E.D. Cal. Apr. 5, 2018), *adopted by* 2018 WL 2128253 (E.D. Cal. May 9, 2018) ("[I]n light of the absence of evidence or information relating to the factual basis for Plaintiff's criminal conviction for resisting, the Court cannot find that Plaintiff's excessive use of force claim necessarily implies the invalidity of his criminal conviction.").

Because Defendant has not established based upon the record available at this stage of the proceedings that a finding of excessive force would necessarily imply or demonstrate the invalidity of Plaintiff's disciplinary conviction, the Court cannot find at this time that *Heck* bars Plaintiff's § 1983 action.[4]

---

[4] In addition to damages on his claim of excessive force, Plaintiff seeks in his "Request for Relief" to have the RVR Log No. 2562660 authored by Defendant dismissed

Based on the foregoing, the Court recommends that Defendant's Motion to Dismiss on the basis of the favorable termination doctrine be **DENIED**.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED**.

**IT IS ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than February 14, 2020**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than February 28, 2020**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 445 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 15, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

by CDCR since it was "entirely false" and "plaintiff was denied due process." (ECF No. 1 at 5.) As an initial matter, the Court notes that Plaintiff does not bring a due process claim in his Complaint. (*See id.* at 3.) Second, to the extent Plaintiff seeks to overturn his disciplinary conviction by way of this § 1983 action, the Court notes that such a remedy would clearly be barred by *Heck*. Moreover, to the extent Plaintiff seeks relief based on the theory that Defendant's use of force was excessive *because* Plaintiff never resisted, such a theory would necessarily imply the invalidity of Plaintiff's conviction for resisting and such a theory would be barred by *Heck*.